IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

RANDY DEWAYNE ROGERS, as Administrator
of the Estate of Randy James Rogers, and on his
own behalf                                                                              PLAINTIFF

v.                                                      Case No. 1:24-cv-1036

COLUMBIA COUNTY; COLUMBIA COUNTY
SHERIFF'S OFFICE; MICHAEL LOE,
MATTHEW HULET; AALIYAH ROSE;
JESSE GUISE; MARK MOSLEY; COUNTY
FACILITY HEALTHCARE OF ARKANSAS,
LLC; DARRELL ELKIN; and NURSE CASSANDRA                        DEFENDANTS

## **ORDER**

Before the Court is Separate Defendants Darrell Elkin ("Elkin") and County Facility

Healthcare of Arkansas' ("CFHA") (collectively "Movants") Motion for Summary Judgment.[1]

ECF No. 142.  Plaintiff Randy Dewayne Rogers, as Administrator of the Estate of Randy James

Rogers and on his own behalf, has responded.  ECF No. 156.  Movants have replied.  ECF No.

164.  The Court finds the matter ripe for consideration.

## **I. BACKGROUND**[2]

On May 20, 2022, Plaintiff's father, Randy James Rogers ("Rogers"), entered the

Columbia County Detention Center ("CCDC") as an inmate or detainee.[3]  Rogers suffered a heart

attack in April 2022 and had coronary stents implanted as a result.  Elkin is a physician assistant

---

[1] Though named as "Darryl Elkins" in the Complaint, the parties use Darrell Elkin as the correct name of this Defendant in their filings relevant to the instant motion.

[2] The Court derives this abbreviated factual background from the record-supported and uncontroverted facts within Movants' Statement of Facts (ECF No. 144), Plaintiff's Statement of Additional Facts (ECF No. 158), and elsewhere in the record.

[3] The other remaining Defendants assert in their Motion for Summary Judgment that Rogers was a convicted inmate of the Arkansas Division of Correction during his time in the CCDC.  ECF No. 137, p. 11.  As explained later in this Order, that distinction makes no functional difference in analyzing Plaintiff's claims against Movants.

and nurse practitioner.  He is the sole owner of CFHA, which contracts with multiple counties in Arkansas to provide medical services.  At the time relevant to this matter, CCDC had entered into a contract with CFHA to provide medical services to detainees.  Pursuant to this contract, Elkin would "be on call 24/7" and make bi-weekly visits to the CCDC.  ECF No. 158-17, p. 1.  The contract also stated that a CFHA nurse would make rounds three times a week.  Separate Defendant Nurse Cassandra Hutts ("Nurse Hutts") was the nurse assigned to the CCDC.  Between May 20 and July 8, 2022, Elkin saw Rogers five times in response to medical requests Rogers submitted.

In the early hours of July 8, 2022, Rogers fell from his bunk in his cell and suffered a laceration to his head.  As CCDC staff responded to this incident, Rogers informed them that he was also experiencing chest pains.  CCDC staff then took Rogers to Magnolia Regional Medical Center's emergency room for treatment.  Rogers returned to the CCDC at approximately 6:36 a.m. that same day.  Shortly after returning, Rogers again alerted CCDC staff that he was experiencing chest pains and difficulty breathing.  He stated that he believed he was having a heart attack.  At 7:47 a.m., CCDC staff attempted to call Nurse Hutts, but she did not answer.  CCDC staff left a voicemail with Nurse Hutts regarding the situation and the steps they had taken to treat Rogers at that point.  Nurse Hutts did not call back for nearly an hour.  At 7:57 a.m., CCDC staff called an ambulance for Rogers.  Emergency medical personnel arrived around 8:10 a.m.  Rogers was unresponsive upon their arrival at the CCDC, and he was pronounced dead shortly after arriving at Magnolia Regional Medical Center.  Elkin was on vacation on this date and was never informed or contacted regarding the situation with Rogers.  The Arkansas State Crime Laboratory's examination of Rogers concluded that his cause of death was a neck fracture from a fall, with ischemic heart disease as a contributory cause.  ECF No. 144-3, p. 1.

On June 13, 2024, Plaintiff filed this action against all Defendants, bringing six total claims

2

pursuant to 42 U.S.C. § 1983 and Arkansas law.  ECF No. 2.  Applicable to the instant motion, Plaintiff brings five claims against Elkin, CFHA, or both.  Claim One is pursuant to § 1983 and is brought against Elkin in his individual capacity for alleged deliberate indifference to Rogers's serious medical needs.  Claim Two is pursuant to § 1983 and is brought against CFHA and Elkin in his official capacity for alleged deliberate indifference to Rogers's serious medical needs.[4] Claim Three is pursuant to Article 2, Section 21 of the Arkansas Constitution and alleges that Movants denied Rogers his rights under the Arkansas Constitution by being deliberately indifferent to his medical needs.  Claim Four alleges Movants committed medical malpractice in the course of providing medical treatment to Rogers.  Claim Six alleges wrongful death against Movants regarding their treatment of Rogers in the CCDC.[5]  Plaintiff seeks compensatory and punitive damages, along with costs and fees.[6]

On February 5, 2026, Movants filed the instant motion seeking summary judgment, along with their brief in support and statement of material facts.  ECF Nos. 142, 143, & 144.  Broadly, Movants argue that the § 1983 claims fail because Elkin had no knowledge of or involvement with Rogers's treatment on July 8, 2022, and because no policy or custom of CFHA caused any deliberate indifference to Rogers's serious medical need.  As to the medical malpractice claim, Movants argue that it fails because they did not render any treatment on July 8, 2022, and that Plaintiff does not meet the expert testimony requirements of such a claim.  Movants do not address the wrongful death claim or the claim pursuant to the Arkansas Constitution.

---

[4] Though Claims One and Two do not explicitly state the nature of the § 1983 claim—individual or official capacity—the language underlying Claim Two and its references to policies and customs makes the distinction between the two claims apparent.  ECF No. 2, p. 15-19.

[5] Movants are not named in Claim Five.  ECF No. 2, p. 25.

[6] The Court is satisfied that it has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the Arkansas law claims.  The factual allegations underlying those claims overlap with the facts underlying Plaintiff's § 1983 claims over which the Court has original jurisdiction pursuant to 28 U.S.C. § 1331.

## II. LEGAL STANDARD

"Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hess v. Union Pac. R.R. Co.*, 898 F.3d 852, 856 (8th Cir. 2018) (citation omitted). Summary judgment is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *See id.* at 248. A dispute is genuine if the evidence is such that it could cause a reasonable fact finder to return a verdict for either party. *See id.* at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in the light most favorable to the nonmoving party. *See Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *See Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). However, a party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. A party that fails to respond to any basis of a motion for summary judgment effectively waives any argument in opposition to that aspect of a motion for summary judgment. *See Department of Labor v. EJ's Cleaning Services, Inc.*, 2020 WL 1432048 at *1 (E.D. Ark. March 19, 2020) (citing *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009)).

### III. DISCUSSION

#### A. § 1983 Claims

A claim pursuant to § 1983 requires a plaintiff to show "the violation of a right secured by the Constitution and laws of the United States" by "a person acting under color of state law." *Mohamud v. Weyker*, 144 F.4th 1099, 1103 (8th Cir. 2025) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). Private individuals and entities can be subject to claims pursuant to § 1983 if the challenged action was taken under color of law, such as when a medical provider contracts to provide health services at a detention facility. *See West*, 487 U.S. at 56-57; *De Rossitte v. Correct Care Sol., LLC*, 22 F.4th 796, 803-04 (8th Cir. 2022) (noting that it is possible for a private healthcare provider for a state correctional facility to be subject to a § 1983 claim); *Burke v. N. Dakota Dept. of Corr. and Rehab.*, 294 F.3d 1043, 1044 (8th Cir. 2002) (noting the same). The parties do not dispute that Elkin and CFHA were acting under color of law as contracted health care providers at the CCDC at the time relevant to this action.

Plaintiff brings two separate claims pursuant to § 1983. Claim One is against Elkin in his individual capacity, which is for "personal liability for individual actions by officials in the course of their duties[.]" *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998). Claim Two is against CFHA and Elkin in his official capacity — which is "equivalent to [a] claim[] against the entity for which [he] work[s.]" *Id.* Thus, Claim Two functions as a single claim against CFHA. The Court will separately address each claim below.

#### 1. Claim One

Claim One alleges that Elkin "acted unreasonably and with deliberate indifference to Mr. Rogers's serious medical needs when [he] failed to consistently provide him with his prescriptions,

ignored his clear request for help managing his symptoms, and failed to call for appropriate outside medical care the morning of his death." ECF No. 2, p. 16.

Movants argue that Plaintiff cannot establish the individual capacity claim against Elkin. ECF No. 143, p. 4-5. Movants do not contest that Rogers had a serious medical need on July 8, 2022. However, Movants emphasize that the record can only demonstrate that Elkin had no awareness of that serious medical need because he was not at the CCDC that day and he was never informed of the situation prior to Rogers's death. Movants contend that the absence of any awareness on Elkin's part means that Plaintiff cannot establish the deliberately indifferent mental state necessary for such a claim. In response, Plaintiff mostly focuses on the alleged shortcomings in CFHA's policies and procedures, or lack thereof, instead of Elkin's individual actions. ECF No. 156, p. 5-8. Plaintiff's most direct statements against Elkin are that he "built and maintained a medical care system for [CCDC] that was deliberately indifferent in several respects" and that he did not "properly" supervise Nurse Hutts. *Id*. at p. 6-8. Plaintiff also notes that Movants do not contest that Rogers had a serious medical need on July 8, 2022. In reply, Movants reiterate their argument that Elkin's complete lack of knowledge of Rogers's serious medical need means that this claim fails as a matter of law. ECF No. 164, p. 2-3. Movants also contend that there is no evidence of Elkin's knowledge of a pattern of conduct, which is required to establish a supervisory liability claim against him. *Id*. at p. 4-5.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Johnson v. Leonard*, 929 F.3d 569, 575 (8th Cir. 2019) (quotation omitted). A pretrial detainee's claim regarding denial of his right to medical care under the Fourteenth Amendment is evaluated the same way as a claim brought by a convicted inmate under the Eighth Amendment. *Jackson v. Buckman*, 756 F.3d 1060,

6

1065 (8th Cir. 2014).  A claim for deliberate indifference has an objective and subjective prong. *See Troupe v. Young*, 143 F.4th 955, 968 (8th Cir. 2025).  The objective prong requires showing that a plaintiff "suffered from an objectively serious medical need." *Id*. at 968-69 (quotation omitted).  "To be objectively serious, a medical need must have been diagnosed by a physician as requiring treatment or must be so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id*. at 969 (quotation omitted).

A detainee with heart issues who displays symptoms of a heart attack can be seen as suffering from an objectively serious medical need. *Plemmons v. Roberts*, 439 F.3d 818, 823-23 (8th Cir. 2006).  Movants concede that Rogers had an objectively serious medical need on the morning of July 8, 2022, after he returned to the CCDC from his first trip to the emergency room. Plaintiff emphasizes this concession, though he does not attempt to argue that Rogers had a serious medical need that could support a denial of medical care claim during any other period of his time in the CCDC.  Though Plaintiff alleged in the Complaint that Defendants refused to provide Rogers with prescription medication (ECF No. 2, pp. 7-8, 16), Plaintiff makes no such assertion in opposition to the instant motion, and the Court cannot locate support in the record showing denial of medication.  Thus, Plaintiff has satisfied the objective prong of this claim regarding Rogers on July 8, 2022, but has not established any other serious medical need that could support a denial of medical care claim.

The subjective prong requires showing that a defendant "actually knew of, but deliberately disregarded" a serious medical need.  *Cannon v. Dehner*, 112 F.4th 580, 586 (8th Cir. 2024) (quotation omitted).  "Deliberate indifference is more than negligence, more even than gross negligence." *Presson v. Reed*, 65 F.4th 357, 365-66 (8th Cir. 2023) (quotation omitted).  The applicable mindset is "akin to criminal recklessness[.]" *Cannon*, 112 F.4th at 587.  "Grossly

7

incompetent or inadequate care can constitute deliberate indifference but the care provided must be so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Id*. (quotation omitted). The evidence must show that the defendant "recognized that a substantial risk of harm existed and knew that their conduct was inappropriate in light of that risk." *Davis v. Buchanan Cnty., Mo.*, 11 F.4th 604, 624 (8th Cir. 2021) (quotation omitted). "Generally, the actor manifests deliberate indifference by intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." *Id*. (quotation omitted). An official's violation of an internal policy, without more, does not establish violation of a constitutional right. *See Walton v. Dawson*, 752 F.3d 1109, 1122 (8th Cir. 2014); *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) ("[T]here is no § 1983 liability for violating prison policy."); *Falls v. Nesbitt*, 966 F.2d 375, 380 (8th Cir. 1992) (noting that an official's "violation of an internal regulation does not give rise to an Eighth Amendment claim" on its own).

The Court finds that Plaintiff has failed to establish his denial of medical care claim against Elkin in his individual capacity. There is no evidence in the record that Elkin "actually knew of" Rogers's serious medical need. *Cannon*, 112 F.4th at 586. Plaintiff admits that Elkins was not present at the CCDC on July 8, 2022, and was never contacted that day regarding Rogers's condition. ECF No. 157, ¶ 14. Plainly, Elkin could not deliberately disregard a medical need for which he was unaware. Plaintiff's new argument regarding Elkin's failure of supervision is similarly unavailing. Even if Plaintiff had asserted such a claim—which the Court does not find in the Complaint—Plaintiff has failed to establish that Elkin "had notice of a pattern of conduct" by subordinates of violating detainees' right to medical care. *Davis*, 11 F.4th at 624. Such a showing is necessary for a supervisory liability claim when a defendant had no personal involvement in the alleged denial of a constitutional right. *See id*. Further, Elkin's failure to be

on call as required by the contract between CFHA and CCDC is insufficient on its own to meet the deliberate indifference standard. *See Walton*, 752 F.3d at 1122; *Gardner*, 109 F.3d at 430; *Falls*, 966 F.2d at 380.  Elkin is clearly entitled to summary judgment on this claim.

### 2. Claim Two

Plaintiff brings Claim Two against Elkin and CFHA and alleges that the "inadequate medical care that led to Mr. Rogers' death was the proximate cause of the policies and widespread practices of Columbia County and CFHA regarding the provision of medical care to people detained at the CCDC." ECF No. 2, p. 16.  The Court presumes that Plaintiff meant to allege that the policies and practices proximately caused Rogers's death.   The only distinct policy or custom articulated by Plaintiff that could be relevant to the instant motion is Columbia County's alleged policy of not permitting CCDC staff to call an ambulance without prior approval from an administrative supervisor.  *Id*. at p. 17-19.  Plaintiff also adds broadly that Defendants "directly encouraged the very type of misconduct at issue in this case, failed to provide adequate training and supervision of healthcare and correctional employees, and failed to adequately punish and discipline prior instances of similar misconduct." *Id*. at p. 18.

Movants argue that the record is insufficient to establish that a CFHA policy or custom caused any alleged deliberate indifference to Rogers's medical need on July 8, 2022.  ECF No. 143, p. 5-6.  Movants assert that this alleged denial of necessary medical care cannot be traced to any official policy of CFHA and that there are no facts to demonstrate a widespread pattern of such conduct by CFHA.  In response, Plaintiff contends that the record shows that "Mr. Elkin built and maintained a medical care system for Columbia County Detention Center that was deliberately indifferent in several respects."  ECF No. 156, p. 6-8.  Plaintiff highlights that his correctional health expert, Dr. Homer Venters ("Dr. Venters"), has opined that Elkin and CFHA created a

substandard health system that 1) "failed to conduct adequate receiving screening/medical clearances", 2) "failed to provide basic care for serious health problems", 3) "failed to respond to a medical emergency", and 4) "failed to maintain basic medical records." *Id*. at p. 6-7.  Plaintiff then notes Elkin's failure to be on call the day Rogers died and Nurse Hutt's failure to answer when called about Rogers's situation.  Plaintiff adds that Elkin had no system to verify if his nurses were answering calls and had no callback time requirements.

In reply, Movants argue that Plaintiff's attempt to rely on a broad systemic critique of CFHA procedures is inadequate to establish this claim without a specific policy or custom that caused the failure to provide Rogers with the needed medical care.  ECF No. 164, p. 2-5.  Movants contend that the record cannot establish a causal connection between the alleged shortcomings of CFHA's procedures identified by Dr. Venters and any denial of medical care for Rogers on July 8, 2022.  Movants underscore this point by noting that Venters disclaimed any opinion on what caused Rogers's death.  To refute Dr. Venters's specific critique regarding CFHA policies allegedly creating a failure to respond to an emergency, Movants cite the uncontroverted testimony from Elkin that he instructed CCDC staff to call an ambulance or take a detainee to a hospital in emergency situations like the one with Rogers.

"Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by 'a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Gladden v. Richbourg*, 759 F.3d 960, 968 (8th Cir. 2014) (quotations omitted).  An official-capacity suit against an individual is functionally a suit against the entity who employs that individual or for the entity which that individual is an agent.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Schaffer v. Beringer*, 842 F.3d 585, 596 (8th Cir. 2016) ("A suit against a public official in his official capacity is actually a suit

10

against the entity for which the official is an agent."). Such a claim must prove that the entity itself caused the alleged constitutional violation through its policy or customs. *See Schaffer*, 842 F.3d at 596 (citations omitted). A policy is "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). A custom is a "continuing, widespread, persistent pattern" of conduct for which policymakers are deliberately indifferent to or give tacit authorization despite having notice of the conduct. *Id*. (quotation omitted). There must be a "causal link" between the targeted policy or custom and the alleged constitutional violation such that it is the "moving force" behind the violation. *Marsh v. Phelps Cnty.*, 902 F.3d 745, 752 (8th Cir. 2018) (quotations omitted).

The Court finds that Plaintiff has failed to establish this claim as well. There is insufficient evidence in the record to show that any CFHA policy or custom caused any denial of medical care to Rogers on July 8, 2022. The opinions in Dr. Venters's expert report (ECF No. 158-15) and supplemental report (158-16) do not carry this burden. Three of the four specific policy or procedural failures identified by Dr. Venters and relied upon by Plaintiff—failure to conduct adequate intake screening, failure to provide basic care for serious health problems[7], and failure to maintain basic medical records—neither assert nor suggest a causal connection between those policies and the alleged denial of medical care on July 8, 2022. ECF No. 158-15, p. 11-18; ECF No. 158-16, p. 9-12. Moreover, Dr. Venters testified in his deposition that he did not have an opinion on whether the shortcomings in CFHA care that he identified contributed to Rogers's death. ECF No. 144-2, p. 2-3.

---

[7] To clarify, Dr. Venters's opinion on failure to provide basic care relates to the general medical care—both in the regular course of operations and in response to medical requests—CFHA provided to Rogers during his stint in CCDC. ECF No. 158-15, p. 13-15; ECF No. 158-16, p. 10-11. This opinion does not include an assessment or critique of the emergency care, or lack thereof, rendered to Rogers on July 8, 2022.

This failure to connect a CFHA policy to an alleged constitutional violation extends to Dr. Venters's opinion regarding the failure to respond to a medical emergency. Though Dr. Venters opines that Roger's situation on July 8, 2022, is one in which CCDC staff should have been instructed is an emergency that requires calling 911 when medical staff are not present (ECF No. 158-15, p. 15-16), Elkin's uncontroverted testimony demonstrates that he—as owner of and presumptive policy maker for CFHA—instructed CCDC staff to do exactly that (ECF No. 144-1, pp. 18-20, 24-25). Plaintiff's attempt to deny this fact does not dispute that Elkin gave such instruction and, instead, focuses on an alleged custom or policy of *CCDC* that requires its staff to get a supervisor's approval before requesting an ambulance for a detainee. ECF No. 157, ¶¶ 7, 11. Additionally, any failure of CFHA personnel to fulfill a contractual obligation to be on call during Rogers's medical emergency is clearly not an outcome of that policy itself but a failure to uphold it. Lastly, Plaintiff has not attempted to establish a widespread pattern of conduct on the part of CFHA as required to show that a custom existed which resulted in the alleged denial of treatment on July 8, 2022. *See Whitledge*, 165 F.3d at 1204. Therefore, without any indication from the record that a CFHA policy or custom was the "moving force" behind the alleged unconstitutional denial of medical care, Plaintiff's claims against CFHA and Elkin in his official capacity fail as a matter of law. *Marsh*, 902 F.3d at 752.

### B. Medical Malpractice Claim

Claim Four is brought pursuant to Arkansas Code § 16-114-203 and alleges that Elkin and CFHA undertook to provide Rogers with medical treatment but breached their duty to provide such treatment consistent with the standard of care, resulting in Rogers's injuries and death. ECF No. 2, p. 20-21.

Movants argue that Plaintiff has failed to present the requisite expert testimony connecting

12

Rogers's injuries to any treatment provided by CFHA personnel. ECF No. 143, p. 6-8. Movants highlight that Dr. Venters disclaimed any opinion on the cause of Rogers's injuries and death on July 8, 2022. Movants then contend that neither Elkin nor any other CFHA personnel provided medical treatment or services to Rogers on that day, which should foreclose any potential liability for the treatment Rogers received that day. In response, Plaintiff argues that Dr. Venters provides opinion on CFHA failures to uphold the standard of care while his other expert, Dr. Bruce Charash ("Dr. Charash"), provides causality opinion linking Rogers's treatment on July 8, 2022, with his subsequent injuries and death. ECF No. 156, p. 8. Plaintiff contends that this combination satisfies the demands of his malpractice claim. In reply, Movants reiterate that Plaintiff cannot establish proximate cause because neither Elkin nor any other CFHA personnel provided medical care to Rogers on the relevant date. ECF No. 164, p. 5.

The Arkansas Medical Malpractice Act ("AMMA") "applies to all causes of action for medical injury[.]" *Pastchol v. St. Paul Fire & Marine Ins. Co.*, 929 S.W.2d 713, 714 (Ark. 1996) (citing Ark. Code Ann. § 16-114-202). "Action for medical injury" is defined as "all actions against a medical care provider, whether based in tort, contract, or otherwise, to recover damages on account of medical injury[.]" Ark. Code Ann. § 16-114-201(1). "Medical care provider" is defined as:

> [A] physician, certified registered nurse anesthetist, physician's assistant, nurse, optometrist, chiropractor, physical therapist, dentist, podiatrist, pharmacist, veterinarian, hospital, nursing home, community mental health center, psychologist, clinic, or not-for-profit home healthcare agency licensed by the state or otherwise lawfully providing professional medical care or services, or an officer, employee, or agent thereof acting in the course and scope of employment in the providing of such medical care or medical services[.]

Ark. Code Ann. § 16-114-201(2). "Medical injury" is defined as:

> [A]ny adverse consequences arising out of or sustained in the course of the professional services being rendered by a medical care provider to a patient or resident, whether resulting from negligence, error, or omission in the performance

13

> of such services; or from rendition of such services without informed consent or in breach of warranty or in violation of contract; or from failure to diagnose; or from premature abandonment of a patient or of a course of treatment; or from failure to properly maintain equipment or appliances necessary to the rendition of such services; or otherwise arising out of or sustained in the course of such services.

Ark. Code Ann. § 16-114-201(3).  Stated succinctly, a medical injury is one that results from "1) a professional service, 2) a doctor's treatment or order, or 3) a matter of medical science." *Paulino v. QHG of Springdale, Inc.*, 386 S.W.3d 462, 467 (Ark. 2012).  "In sum, a medical injury is one that holds, 'at its genesis, a decision to pursue a method of treatment, care, or course of medical action relating to a specific patient.'" *Ruloph v. Lammico*, 718 S.W.3d 394, 401 (Ark. App. 2025) (quoting *Paulino*, 386 S.W.3d at 467).

"In order to sustain a claim for medical malpractice, one must prove the applicable standard of care, the defendant's breach thereof, and that the defendant's breach proximately caused injury." *Jones v. McGraw*, 288 S.W.3d 623, 626 (Ark. 2008).  Demonstrating that those elements are satisfied typically requires expert testimony:

> (a) In any action for medical injury, when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge, the plaintiff shall have the burden of proving:
>
> > (1) By means of expert testimony provided only by a medical care provider of the same specialty as the defendant, the degree of skill and learning ordinarily possessed and used by members of the profession of the medical care provider in good standing, engaged in the same type of practice or specialty in the locality in which he or she practices or in a similar locality;
> >
> > (2) By means of expert testimony provided only by a medical care provider of the same specialty as the defendant that the medical care provider failed to act in accordance with that standard; and
> >
> > (3) By means of expert testimony provided only by a qualified medical expert that as a proximate result thereof the injured person suffered injuries that would not otherwise have occurred.

Ark. Code Ann. § 16-114-206(a).

Examples of negligence that are within the comprehension of laymen, as contemplated by Arkansas Code § 16-114-206(a), include "a surgeon's failure to sterilize his instruments or to remove a sponge from the incision before closing it." *Mitchell v. Lincoln*, 237 S.W.3d 455, 460 (Ark. 2006) (quotation omitted). Conversely, claims that attack a conscious treatment decision or a physician's judgment will typically require expert testimony. *See Skaggs v. Johnson*, 915 S.W.2d 253, 256 (Ark. 1996). The key consideration is if a layman would need expert testimony to understand why certain acts or omissions by a medical provider constitute negligence. *See Mitchell*, 237 S.W.3d at 460. "The vast majority of [Arkansas] cases to have considered this issue hold that expert medical testimony is necessary because the alleged medical negligence is not within the comprehension of a jury of laymen." *Id*. (collecting cases).

The locality rule put forth in Ark. Code § 16-114-206(a)(1) "requires that, in any action for a medical injury, expert testimony is necessary regarding the skill and learning possessed and used by medical care providers engaged in that specialty in the same or similar locality." *Mitchell*, 237 S.W.3d at 459. Consideration may be given to "geographical location, size and character of the community," but identifying a similar locality does not depend on "population or area . . . but rather upon their similarity from the standpoint of medical facilities, practices and advantages." *First Com. Tr. Co. v. Rank*, 915 S.W.2d 262, 267 (Ark. 1996) (quotation omitted). The expert need not have practiced in the particular locality or be "intimately familiar" with practice in the locality "if an appropriate foundation is established to demonstrate that the witness is familiar with the standard of practice in a similar locality, either by his testimony or by other evidence showing the similarity of localities." *Id*. (quotation omitted). Utilizing a national standard of care is insufficient. *See Plymate v. Martinelli*, 2013 Ark. 194, at 4-5, 2013 WL 1932918, at *2; *and see Harvey v. Johnson*, 715 S.W.3d 930, 931-32 (Ark. App. 2025) (noting that application of a general

15

statewide standard is not sufficient) (citation omitted).  If an expert fails to establish the standard of care in adherence to the locality rule, any of their testimony regarding the remaining elements of the malpractice claim is "of no merit" because it would not be based upon the applicable standard of care.  *Williamson v. Elrod*, 72 S.W.3d 489, 492 (Ark. 2002).  Establishing the applicable standard of care goes to the sufficiency of the evidence and is "not a matter of mere foundation[.]"  *Heritage Physician Grp., P.A. v. Minton*, 432 S.W.3d 682, 686-87 (Ark. App. 2014) (citation omitted).

The Court finds that Plaintiff has failed to establish a medical malpractice claim against Movants.  Plaintiff cannot satisfy the underlying expert testimony requirements for the elements of this claim.  The Court previously found that Dr. Charash's causation opinion is without merit because he was not familiar with the local standard of care.  ECF Nos. 169, p. 12-13; ECF No. 170, p. 9-10.  Even assuming Dr. Charash can provide a causation opinion, his expert report is limited to opining on the care Rogers received on July 8, 2022.  ECF No. 158-13.  No CFHA personnel were present at CCDC or specifically advised CCDC staff on how to proceed that day.  No CFHA personnel had knowledge of the situation prior to Rogers's death.  Thus, there is nothing in the record demonstrating that Elkin or any CFHA personnel engaged in "a decision to pursue a method of treatment, care, or course of medical action relating to" Rogers on July 8, 2022.  *Ruloph*, 718 S.W.3d at 401; *and see* Ark. Code Ann. § 16-114-201(3) (noting that a medical injury arises out of or is sustained "in the course of the professional services being rendered")  Further, as previously noted, there is no causality opinion from Dr. Venters connecting Rogers's injuries and death to any treatment from Elkin or other CFHA personnel prior to July 8, 2022.  ECF No. 144-2, p. 2-3.  To the extent Dr. Venters opines that the standard of care was breached when CCDC personnel failed to call 911 soon enough, Elkin's uncontroverted testimony is that his instructions

16

to CCDC staff were to do what Dr. Venters said should have happened.  ECF No. 144-1, pp. 18-20, 24-25.  In sum, this record shows that Plaintiff has not established the applicable standard of care and cannot create a genuine question as to whether any treatment from Elkin or CFHA breached that standard of care or whether any such breach proximately caused Rogers's injuries on July 8, 2022.  Such failures are fatal to this claim.  *See McGraw*, 288 S.W.3d at 626; *Valentine v. White Cnty. Med. Ctr.*, 615 S.W.3d 729, 732-33 (Ark. App. 2020).

### C. Wrongful Death

Claim Six asserts a wrongful death action against Elkin and CFHA because of their alleged failures to provide Rogers with appropriate medical care while in the CCDC.  ECF No. 2, p. 22. This claim necessarily fails because of Plaintiff's failure to establish the medical malpractice claim.

The AMMA states that it is "the sole remedy with respect to any action for medical injury against a medical care provider."  Ark. Code Ann. § 16-114-213; *and see* Ark. Code Ann. § 16-114-202 (stating that the AMMA "applies to all causes of action for medical injury accruing after April 2, 1979, and, as to such causes of action, shall supersede any inconsistent provision of law."). Any cause of action rooted in an alleged medical injury—regardless of whether it is labeled as a claim for fraud, breach of contract, or wrongful death—is treated as a medical malpractice action and subject to the requirements of such a claim.  *See Howard v. Baptist Health*, 2026 Ark. App. 76, at 9-10, 2026 WL 290635, at *4-5 (noting that all claims for medical injury "are subject to the expert-testimony requirement of the medical malpractice act.") (citations omitted); *and see Johnson v. Universal Health Serv., Inc.*, 652 S.W.3d 581, 585 (Ark. App. 2022). ("[C]auses of action for medical malpractice and wrongful death are not separate and distinct when the cause of death is alleged to have resulted from a medical injury.").  Non-malpractice claims for a medical

injury are subsumed into a medical malpractice claim, and a failure to establish the malpractice claim equates to failure to establish all other claims for medical injury.  *See Howard*, 2026 Ark. App. 76, at 9-11, 2026 WL 290635, at *5; *Gray v. E.R.R.S., Inc.*, 2025 Ark. App. 327, at 7-9, 2025 WL 1450355, at *3-4; *Reggans v. Schlesinger*, 687 S.W.3d 387, 390 n.1, 395-97; *Valentine*, 615 S.W.3d at 730, 732-33.

The only reasonable reading of Plaintiff's wrongful death claim is that it is one founded on an alleged medical injury resulting from "a decision to pursue a method of treatment, care, or course of medical action relating to a specific patient."  *Ruloph*, 718 S.W.3d at 401.  Thus, Plaintiff's wrongful death action against Elkin and CFHA is not a separate action from his medical malpractice claim against them.  *See Howard*, 2026 Ark. App. 76, at 9-10, 2026 WL 290635, at *4-5; *Johnson*, 652 S.W.3d at 585.  Plaintiff's failure to establish his medical malpractice claim automatically extends to his wrongful death claim.  *See Howard*, 2026 Ark. App. 76, at 9-11, 2026 WL 290635, at *5; *Gray v. E.R.R.S., Inc.*, 2025 Ark. App. 327, at 7-9, 2025 WL 1450355, at *3-4.  Consequently, the Court must also grant summary judgment on this claim.

**D. Arkansas Constitution Claim**

Claim Three asserts that "CFHA Defendants" are liable under "Arkansas State Constitution Art[icle] 2 § 21" for their alleged deliberate indifference to Rogers's serious medical needs.  ECF No. 2, p. 19-20.  Though Plaintiff does not explicitly designate which Defendants are encompassed by the "CFHA Defendants" label, the Court interprets it to include Movants.  The Court also interprets this claim as one pursuant to the Arkansas Civil Rights Act ("ACRA"), Arkansas Code § 16-123-101 *et seq.*, seeking relief for the alleged denial of Rogers's rights[8] under Arkansas

---

[8] "Every person who, under color of any statute, ordinance, regulation, custom, or usage of this state or any of its political subdivisions subjects, or causes to be subjected, any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Arkansas Constitution shall be liable to the party injured in an action in circuit court for legal and equitable relief or other proper redress."  Ark. Code Ann. § 16-123-105(a).

Constitution Article 2 § 21.  That section reads:

> No person shall be taken, or imprisoned, or disseized of his estate, freehold, liberties or privileges; or outlawed, or in any manner destroyed, or deprived of his life, liberty or property; except by the judgment of his peers, or the law of the land; nor shall any person, under any circumstances, be exiled from the State.

AR Const. Art. 2, § 21.  Arkansas courts analyzing ACRA claims are guided by—and seek to be consistent with—federal decisions interpreting 42 U.S.C. § 1983 and parallel federal rights.  *See Harmon v. Payne*, 592 S.W.3d 619, 623 (Ark. 2020).

The Court's findings regarding Plaintiff's § 1983 claims raises the question of whether those findings should apply to the ACRA claim.  Movants make no argument regarding this claim or suggest that any of their arguments regarding the § 1983 claims are applicable to this claim.  Plaintiff likewise does not mention this claim in his response to the instant motion or indicate that this claim is tied to the resolution of any other claim.  The absence of any such arguments constrains the Court from addressing the ACRA claim in this Order.  However, leaving this claim to linger until trial when other findings have possibly resolved all potential questions is an unacceptably inefficient outcome.  Accordingly, the Court will direct Plaintiff to submit briefing regarding this claim to determine if there is a genuine question of fact remaining for trial.  Movants will be directed to submit additional briefing in response if necessary.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Movants' Motion for Summary Judgment (ECF No. 142) should be and hereby is **GRANTED IN PART**.  Plaintiff's § 1983 claims, medical malpractice claim, and wrongful death claim against Separate Defendants Elkin and CFHA are **DISMISSED WITH PREJUDICE**.  Plaintiff is directed to submit briefing within fourteen (14) days of this Order regarding whether or not the Court's dismissal of his § 1983 claims should result in dismissal of his ACRA claim.

**IT IS SO ORDERED**, this 12th day of May, 2026.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge